IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BIG THIRST, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:22-CV-467-RP |
| LAUREN WYLIE DONOHO, | § § | |
| Defendant. | § § | |

**ORDER**

On November 16, 2022, the Court held a hearing in person on Plaintiff Big Thirst's ("Big Thirst") motion for civil contempt against Defendant Lauren Wylie Donoho ("Donoho"). (Mot., Dkt. 16; Minute Entry, Dkt. 70). The Court also heard arguments regarding Donoho's motion to dissolve the temporary restraining order, (Dkt. 49), and motion for sanctions against Big Thirst, (Dkt. 58). The Court requested post-hearing briefing, which both parties filed on December 2, 2022. (Dkts. 72, 74). Big Thirst concurrently filed a renewed motion for attorney's fees. (Dkt. 73). After considering the evidence in the record, the parties' arguments, and the relevant law, the Court will grant Big Thirst's motion for attorney's fees, grant in part and deny in part Big Thirst's motion for civil contempt, and deny Donoho's motion for sanctions.

**I. BACKGROUND**

In early 2021, Donoho and Cross-Defendant Matt McGinnis began developing an e-commerce platform for the liquor industry, which was formed as Big Thirst, Inc. in March 2021. (Counterclaim, Dkt. 2, at ¶¶ 10–14). Donoho and McGinnis each contend that they developed the Big Thirst concept. Donoho alleges that, from January to October 2021, she worked full-time without compensation developing the "tech stack" for the new platform, including the website bigthirst.com, all software applications, and the source code for the order management and

1

fulfillment system. (*Id.* at ¶¶ 18–19). Big Thirst alleges that Donoho developed a data dashboard that provides data analytics to customers and operates in conjunction with third-party software applications including Shopify, which creates the Big Thirst shopping cart. (Compl., Dkt. 1-1, at ¶¶ 3.01, 3.04).

McGinnis is Big Thirst's CEO. (*Id.* ¶ 3.12). Donoho, who owned 27% of the company's stock, alleges that she contributed 90% of Big Thirst's working capital, never had an employment agreement with the company, and never assigned nor licensed to it any of her intellectual property. (Dkt. 2, at ¶¶ 17, 19). An ownership dispute arose between McGinnis and Donoho when Big Thirst sought a loan from the Small Business Administration. (*Id.* at ¶ 20). Big Thirst alleges that Donoho demanded a majority ownership interest in the company and exclusive control and threatened that otherwise, she would shut down the data dashboard, which: "For all intents and purposes, [] shuts down the company, and destroys Big Thirst, Inc.'s relationships with its customers and its reputation." (Dkt. 1-1, at ¶ 3.07). Donoho alleges that due to the dispute, she "was forced to resign her 'title' of Chief Operating Officer and her position as a Director of Big Thirst" on April 7, 2022. (Dkt. 2, at ¶ 22). Big Thirst alleges that McGinnis lost access to the data dashboard the same day. (Dkt. 1-1, at ¶ 3.12).

Big Thirst filed this lawsuit against Donoho on April 11, 2022. *Big Thirst, Inc. v. Lauren Wylie Donoho*, Cause No. D-1-GN-22-001678 (459th Civil District Court, Travis County, Texas). (Dkt. 1-1). Big Thirst alleged a sole claim of breach of fiduciary duty and requested temporary and permanent injunctive relief, including a temporary restraining order ("TRO"). (*Id.*).

The next day, the state court entered a TRO ordering Donoho to, inter alia: "Restore Big Thirst, Inc.'s data dashboard to fully functioning status as it was on April 1, 2022" and provide "all administrative log-in credentials for all software owned by Big Thirst, Inc. and intellectual property labeled as belonging to Big Thirst, Inc." (Dkt. 1-4, at 1). The TRO expired on April 25, 2022, and

the Court entered a Temporary Injunction ("TI") granting similar relief on April 26, 2022. *Id.*[1] The same day, Big Thirst filed a motion for contempt of the TI, contending that Donoho had refused to "return the dashboard as it was prior to April 1, 2022," and provide all of the log-in credentials as ordered. (Dkt. 1-7, at ¶ 2.01).

The state court entered a temporary injunction on April 26, 2022. (Dkt. 1-6). The court found that "Defendant's conduct, unless enjoined, will cause irreparable harm to Plaintiff in that it will lose reputation and goodwill at the critical start-up time in its corporate existence. Unless enjoined it is likely that Defendant's conduct will result in the inability of Plaintiff to continue its operations." (*Id.* at 1). The state court further found that Big Thirst's operations were shut down; that unless it enjoined Donoho, Big Thirst "will be unable to support its customers and their use of the data dashboard, Plaintiff's key product"; and that: "[t]o continue to operate, Big Thirst, Inc. needs the data dashboard to be returned to fully functioning status as it was on April 1, 2022." (*Id.* at 2–3). Pending trial on the merits, the state court enjoined Donoho as follows:

1. Restore Big Thirst, Inc.'s data dashboard to fully functioning status as it was on April 1, 2022, including but not limited to returning Google Analytics, Google Ads, Facebook A[d]s, and Mailchimp analytics;
2. Forward all emails that Defendant re-routed from a Big Thirst, Inc. email account to her personal email account to help@bigthirst.com;
3. Provide Big Thirst, Inc. with all administrative log-in credentials for all software and intellectual property owned by Big Thirst, Inc., labeled as belonging to Big Thirst, Inc., paid for from a Big Thirst, Inc. bank account, or ordered on behalf of Big Thirst, Inc., including but not limited to: a. GoDaddy, b. Shipstation, c. Quickbooks, d. Stripe, e. Paypal, f. Shopify, g. Panoply.io, h. Auth0.com, i. https://gobigthirst.herokuapp.com, j. Cumul.io, k. BigThirst.com, l. WIP for bigthirst.com, and m. Klavyio,
4. All parties are prohibited from changing, modifying, copying, selling, or providing access to third parties to any intellectual property owned or allegedly owned by the company. This prohibition does not exclude use by customers as used prior to April 1, 2022.

(*Id.* at 2–3).

---

[1] Some of Donoho's allegedly contemptuous conduct violated the TRO, not the TI. However, for simplicity and because the orders granted essentially identical relief, the Court will refer to the two orders as the TI.

Meanwhile, Donoho registered the website bigthirst.com and the order management and fulfillment system computer program with the United States Copyright Office, effective April 27 and April 26, 2022, respectively. (Dkts. 18-2, 18-3).

The state court held a hearing on Big Thirst's motion for contempt of the TI on April 29, 2022, and granted the motion in part on May 12, 2022. (Dkt. 1-9). The state court found that Donoho "engaged in knowing, ongoing, and continuous contempt of the Temporary Restraining Order," and that her contempt of court had impaired Big Thirst's ability to continue operations. (*Id.* at 1). The court fined Donoho $500. (*Id.* at 2). Also on May 12, 2022, Donoho removed Big Thirst's action to this Court and filed a counterclaim and cross-complaint against Big Thirst and its three directors: McGinnis, his wife Suzanne McGinnis, and Mark Shilling. (Dkts. 1, 2). Donoho asserts counterclaims and cross-claims for copyright infringement against Big Thirst; contributory copyright infringement, conspiracy, and fraud by nondisclosure against McGinnis, Suzanne McGinnis, and Shilling; conversion against Big Thirst and McGinnis; and minority shareholder oppression, breach of fiduciary duty, and fraud against McGinnis.

One entity included in the state court's administrative log-in credentials order is Cumul.io, which aggregates data and hosts Big Thirst's dashboard. (Dkt. 1-6, at ¶ 3(j)). Donoho eventually provided account credentials, though the parties dispute what level of access was granted and when. Shortly after Big Thirst gained access around May 18, 2022, Donoho also sent Cumul.io a notice of copyright infringement and request for removal of infringing material pursuant to the Digital Millennium Copyright Act ("DMCA"), commonly known as a DMCA takedown request. (Dkt. 16-3). The takedown took effect on May 24, 2022, "essentially locking Big Thirst out of the Cumul.io account," which Big Thirst alleges "has restricted its ability to deliver services to its clients." (Dkt. 22, at 3–4).

The Court referred Big Thirst's motion to Judge Hightower, who issued a report and recommendation on July 2, 2022. (R. & R., Dkt. 36). In her report, Judge Hightower recommended denying criminal sanctions against Donoho, but found that Big Thirst had made a prima facie showing that Donoho had failed to comply with the state court TI as to the Cumul.io account, DMCA takedown request, and providing the password to gobigthirst@gmail.com. (*Id.* at 8–10). The Court adopted Judge Hightower's findings on October 17, 2022. (Order, Dkt. 60).

In addition, after Judge Hightower issued her report and recommendations, Donoho filed two separate motions against Big Thirst. First, on August 5, 2022, Donoho moved to dissolve the temporary injunction, arguing that it was improperly issued. (Mot., Dkt. 49). Next, Donoho filed a motion to enforce the TI against Big Thirst, arguing that it had improperly interfered with her access to intellectual property and spoliated evidence by transferring the Big Thirst domain. (Mot., Dkt. 58).

The Court held a hearing on Big Thirst's motion for contempt and Donoho's two motions on November 16, 2022. At the hearing, Big Thirst represented that it had effectively regained access to the data and accounts at issue in the TI but did not wish to dissolve the TI until Donoho was removed from the company's PayPal account. (Dkt. 70). The Court instructed the parties to discuss the PayPal issue to determine if it could be resolved without the Court's intervention. (*Id.*). To this date, neither party has filed a notice or status report regarding PayPal.

## II.  APPLICABLE LAW

Courts may impose sanctions for civil contempt as exercises of their inherent powers to protect their proper functioning and ensure "submission to their lawful mandates." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 227 (1821)). This "justification for the contempt authority is at its pinnacle . . . where contumacious conduct threatens a court's immediate ability to conduct its proceedings." *Id.* at 832.

5

"The violation of an injunction is a contempt against an entire court insofar as it flouts the court's basic authority to preserve order and administer justice." *In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987)).

Generally, "[j]udicial sanctions in civil contempt proceedings [are] employed for either or both of two purposes: to coerce the defendant into compliance with the court's order [or] to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). Here, both parties have filed motions for civil contempt, and bear the burdens in their respective motions "of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). The allegedly "contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines*, 228 F.3d at 581.

Civil contempt proceedings do not require the same procedural safeguards as do criminal contempt proceedings involving punitive sanctions. "Neither a jury trial nor proof beyond a reasonable doubt is required." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019). In particular, "indirect contempts involving discrete, readily ascertainable acts . . . properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." *Bagwell*, 512 U.S. at 833.

When determining an appropriate sanction, the Court must consider, with appropriate findings made in the record, "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp. v.*

*Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (quoting *United States v. United Mine Workers,* 330 U.S. 258, 304 (1947)).

### III.  ANALYSIS

Despite the numerous filings, the motions for contempt boil down to three core issues: (1) whether Donoho violated the TI through her DMCA takedown request, (2) whether Donoho violated the TI by refusing to timely turn over the Cumul.io account and Google credentials, and (3) whether Big Thirst violated the TI when it assumed control over the Big Thirst domain. The Court will address each in turn, and then briefly discuss the motion to dissolve the TI.

#### A. Big Thirst's Motion for Civil Contempt

1.  DMCA Takedown Request

The first issue is whether Donoho violated the TI by filing a DMCA takedown request on May 18, 2022, with Cumul.io. (Mot., Dkt. 16 at 4; Pl.'s Brief, Dkt. 72, at 2). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). For civil contempt, this must be established by clear and convincing evidence. *Id.* This evidence must be "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (quotation marks and citations omitted). Here, there is no material dispute as to the facts. On May 18, 2022, Donoho filed a DMCA takedown request with Cumul.io, which took effect on May 24, preventing Big Thirst from accessing Cumul.io and all associated accounts through the site. (Email from Cumul.io, Dkt. 72-4). Instead, the parties dispute whether the TI prohibited the DMCA takedown with instructions specific enough to warrant sanctions for civil contempt. (*See* Def.'s Brief, Dkt. 74,

7

at 4–6 (arguing that civil contempt requires an unambiguous instruction not to engage in certain conduct)).

Here, the state court issued the TI to prevent Donoho's conduct from interfering with Big Thirst's operations. (TI, Dkt. 16-1, at 1). As the court wrote, "Unless enjoined it is likely that Defendant's conduct will result in the inability of Plaintiff to continue its operations." (*Id.*). The TI required Donoho to do at least three discrete tasks: (1) restore the dashboard to fully functioning status, (2) forward relevant emails to Big Thirst, and (3) provide Big Thirst with administrative log-in credentials to software accounts, including Cumul.io. (*Id.*). Donoho argues that nothing in this TI specifically prohibited her from initiating a DMCA takedown request, and as such, was not a violation of the Court's order. (Minute Entry, Dkt. 70; Def.'s Brief, Dkt. 72, at 6–8).

The Court disagrees with Donoho. First, before she filed her DMCA takedown, the state court had already found that Donoho was in violation of its injunction and admonished her not to come up "with [her] own, private, hyper-technical interpretations which minimize [her] need to comply." (Contempt Order, Dkt. 16-2). Donoho's argument that a DMCA takedown request was not specifically prohibited by the state court is directly at odds with the court's instruction not to come up with "hyper-technical interpretations" of its orders. Second, the TI *does* prohibit conduct which interferes with the full functions of Big Thirst's sales dashboard. In relevant part, the TI states that Donoho shall, "[r]estore Big Thirst, Inc.'s data dashboard to fully functioning status as it was on April 1, 2022, including but not limited to returning Google Analytics, Google Ads, Facebook Ads, and Mailchimp analytics." (TI, Dkt. 16-1, at 1). Big Thirst has shown that the DMCA takedown prevented it from using a fully functional dashboard. The DMCA takedown notice disabled the Big Thirst Cumul.io account, which in turn restricted Big Thirst from being able to deliver services to its clients. (Mot., Dkt. 16, at 4). According to Big Thirst's briefing and McGinnis's testimony, the DMCA takedown request stayed in effect through September. (Notice, Dkt. 55, at 1). Eventually,

8

Big Thirst developed an alternate client data dashboard in order to circumvent the ongoing struggle to regain access to the dashboard. (*Id.*).[2] The DMCA takedown request interfered with Big Thirst's data dashboard and rendered it unusable. As such, it violated the terms of the TI which required Donoho to "restore Big Thirst Inc.'s data dashboard to fully functional status." (TI, Dkt. 16-1, at 1).[3]

The language did not need to specifically prohibit a DMCA takedown request because it was evident that the TI covered all conduct that would prevent the restoration of the Big Thirst dashboard. (*Id.*). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1995). Here, the court order required Donoho to restore the dashboard, and she violated that order when she engaged in conduct which she knew would disable the dashboard's operations.

Even if the order did not prohibit the DMCA takedown request with exact specificity, Donoho had sufficient notice that such action should have been barred. Donoho relies extensively, almost exclusively, on the notion that conduct must be barred with a "definite and specific order of the court." (Def.'s Brief, Dkt. 74, at 4 (citing *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787 (5th Cir. 2013)). However, the Fifth Circuit in *Hornbeck* also noted,

> [A] court "need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated." *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 578 (5th Cir.2000). The order must "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or

---

[2] Judge Hightower has certified her findings of fact under 28 U.S.C. § 636(e)(6), and having already adopted them, the Court need not revisit her conclusions. (R. &. R., Dkt. 36; Order, Dkt. 60). Judge Hightower's findings similarly make clear that Donoho knew her DMCA takedown request would interfere with the dashboard. As Judge Hightower wrote, "Donoho also testified, however, that she knew the dashboard could not be seen due to the DMCA takedown by host Cumul.io in response to her request." (R. & R., Dkt. 36, at 9).

[3] Donoho also contends that the dashboard was already down by the time she filed her DMCA takedown request. (*See, e.g.*, Def.'s Obj., Dkt. 43, at 12). This issue has already been addressed by Judge Hightower, so the Court need not address it at length again. Donoho testified that she knew the DMCA takedown request would disable the dashboard and that it could not be seen by Big Thirst. (Order, Dkt. 36, at 9). Regardless of whether the dashboard was running successfully at the time, Donoho filed her DMCA takedown request with the knowledge that it would disable the dashboard, and thus violated the TI.

required," Fed. R. Civ. P. 65(d), but a district court is entitled to a degree of flexibility in vindicating its authority against actions that, while not expressly prohibited, nonetheless violate the reasonably understood terms of the order.

*Hornbeck*, 713 F.3d at 792.

Here, the "reasonably understood" terms of the order prohibited the DMCA takedown request. Repeatedly, the TI stated that Donoho's actions had harmed Big Thirst. (TI, Dkt. 16-1). It made clear that Big Thirst needed full access to its data dashboard and services to prevent irreparable harm. (*Id.*). It noted, "Unless enjoined it is likely that Defendant's conduct will result in the inability of Plaintiff to continue its operations." (*Id.*). A reasonable understanding of the TI was that Donoho was required to restore the dashboard to its fully functioning status.

Finally, the state court's civil contempt order should have made Donoho aware with no uncertainty that a DMCA takedown request would violate the TI, (Contempt Order, Dkt. 16-2). As the Honorable Cleve Doty noted, "Donoho engaged in knowing, ongoing, and continuous contempt of the Temporary Restraining Order." (*Id.*, at 1). He further stated, "The Court also ADMONISHES Ms. Donoho and her counsel to refrain from reading Court orders and coming up with their own, private, hyper-technical interpretations which minimize their need to comply, and thus, put Ms. Donoho firmly in contempt of Court." (*Id.*). The Court issued the contempt order on May 12, 2022—six days before Donoho filed her DMCA takedown request. If the TI itself did not put Donoho on notice that she should not interfere with Big Thirst's dashboard, then the contempt order clarified its scope with no uncertainty.

2.  Google Account

For similar reasons, the Court will also grant Big Thirst's motion for civil contempt as to the Google account in question. In its original contempt motion, Big Thirst claimed that Donoho had still not provided administrative log in credentials for Google Analytics and Google Ads. (Mot., Dkt. 16, at 3–4). In her report and recommendation, Judge Hightower concluded that Big Thirst had

made a prima facie showing that Donoho had refused to provide the account password as required by the explicit terms of the TI. (R. & R., Dkt. 36, at 8–9). Donoho, in her defense, argues that the issue is not properly before the Court, because Big Thirst allegedly only raised the issue in a reply brief. (Def.'s Brief, Dkt. 74, at 7); *see also Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326 (5th Cir. 2008) (stating that arguments cannot be raised for the first time in a reply brief). Donoho's argument misstates the facts. While Big Thirst did not explicitly use the email address of its Google account (gobigthirst@gmail.com), it did mention the Google analytics and Google Ads account. In addition, Big Thirst asked the Court to order compliance with the TI in full, including providing all "administrative log-in credentials . . . labeled as belonging to Big Thirst." (TI, Dkt. 16-1, at 2). Big Thirst properly raised the issue in its original motion when it stated that Donoho should be held in contempt for refusing to turn over access to the Google and other administrative accounts—it did not need to specifically enumerate the Gmail account used to access those Google services.

In addition, Donoho argues that the TI did not require her to turn over the Google account because it was her personal email address, not a company account. It is difficult to believe that an email address labeled "gobigthirst@gmail.com" was solely a personal email account. Further, the TI ordered Donoho to turn over all accounts "labeled as belonging to Big Thirst." (*Id.*). A Gmail account with the address "gobigthirst@gmail.com" is labeled with Big Thirst. Regardless of the actual purpose of the account, it was labeled as belonging to Big Thirst. Accordingly, Donoho violated the TI by refusing to give Big Thirst access to the account.

### 3. Cumul.io Administrative Access

Big Thirst also requests a finding of civil contempt alleging that Donoho failed to provide full administrative access to the company's Cumul.io account. (Mot., Dkt. 16, at 4).[4] Here, the facts

---

[4] Cumul.io provides different levels of access: viewer, designer, and owner. (Pl.'s Brief, Dkt. 72, at 1 n.1). For the sake of clarity, the Court will refer to "owner" access as complete access.

11

are particularly disputed. The parties agree that Big Thirst gained complete access to its Cumul.io account on May 23, 2022—a day before the DMCA takedown request shut down its Cumul.io services. (R. &. R., Dkt. 36, at 9). However, the events leading up to May 23 appear murkier. Big Thirst claims that Donoho repeatedly refused to give Big Thirst complete access to its Cumul.io account until the 23. (Pl.'s Brief, Dkt. 72, at 1–3). Donoho claims that this is "entirely meritless" and that she "went above and beyond to continue to meet Big Thirst's multiple requests" for access. (Def.'s Brief, Dkt. 74, at 9). As evidence, both parties cite chains of emails between counsel that seem to show a dispute over whether Donoho had given full Cumul.io access. (*Id.*; Pl.'s Brief, Dkt. 72).

More convincingly, Big Thirst includes an email from Haren Vermylen, the apparent founder of Cumul.io, stating that owner access was granted to Big Thirst's email address on May 23, 2022. (Email, Dkt. 72-1, at 2). Nonetheless, the evidentiary standard for civil contempt is a high one. The evidence must be "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (quotation marks and citations omitted). Here, although it appears likely that Big Thirst was not granted complete access until May 23, the evidence is not so overwhelming as to warrant a clear conviction without hesitation. Donoho has plausibly set forth that she gave full access to Big Thirst before May 23, 2022, who was simply unable to log in with that access. (Def.'s Brief, Dkt. 74, at 7–9). It may very well be the case that Donoho did wait until the 23 to grant full access, but such a question remains subject to factual dispute and will more properly be before the Court after discovery has been conducted on Big Thirst's breach of fiduciary duty claim. Accordingly, the Court will deny Big Thirst's motion for contempt as to the Cumul.io account.

**C. Remedy and Attorney's Fees**

Overall, the Court finds that Donoho violated the TI with her DMCA takedown request and refusal to turn over the Google account. "[S]anctions for civil contempt are meant to be 'wholly remedial' and serve to benefit the party who has suffered injury or loss at the hands of the contemnor." *PeTIleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392 (5th Cir. 1987) (citing *Southern Railway Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir.1968)). Contempt sanctions may coerce compliance with an order of the court or compensate for losses caused by noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

Here, Big Thirst has established that it was forced to rebuild the sales dashboard and has lost revenue and clients as a result of the dashboard being taken down. (Notice, Dkt. 55, at 3). However, it is unclear whether the dashboard would have returned to fully functional status even if Donoho had not filed her DMCA takedown request. (Def.'s Resp. Dkt. 75, at 74). In other words, while Big Thirst has shown that Donoho violated the TI, it has not shown with clear and convincing evidence that the DMCA takedown request was the sole cause of rebuilding the dashboard. It would be difficult, if not impossible, to separate the damages from the violation of the TI from damages from the other allegedly wrongful conduct. Likewise, while denial of its Google account undoubtedly hurt Big Thirst, the precise damages for this conduct are murky. Thus, the Court declines to award Big Thirst compensatory sanctions for the denial of access to its Google account and the cost of rebuilding its sales dashboard.

Instead, the Court finds that appropriate compensation for Big Thirst is its cost in having to litigate contempt sanctions for Donoho's repeated violations of the TRO and TI. Compensation for civil contempt may include "the cost of bringing the violation to the attention of the court . . . [and] an award of attorneys' fees to the party doing so *Nevada v. U.S. Dep't of Labor*, 321 F. Supp.3d 709, 728 (E.D. Tex. 2018). Here, while the exact business damages incurred by Big Thirst are unclear,

there is no doubt that Big Thirst has expended substantial resources in trying to make sure that Donoho has complied with the TI and can no longer interfere with the operation of its business. Big Thirst argued twice in state court regarding the TRO and has held two hearings in federal court. Because this is the second time that Donoho has violated the TRO/TI, the Court finds that a full award of attorney's fees associated with Donoho's contempt is appropriate.

      Big Thirst itself filed a renewed motion for attorney's fees along with its post-hearing briefing, asking for $80,137.50 in fees and costs. (Dkt. 73). Donoho, in response, argues that attorney's fees are improper because Texas state law does not authorize attorney's fees for a finding of civil contempt. (Def.'s Resp., Dkt. 75). This argument is unavailing. Removal of the injunction to federal court meant that federal procedure governs its enforcement. *See Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1988) ("[I]t is well established that the state court order becomes federalized insofar as federal, rather than state, procedure governs the manner of its enforcement as well as supplies whatever policy justification that might support its continuance."). In addition, the Fifth Circuit has noted that when a case is removed, the district court is "thereupon free to treat the order as it would any such interlocutory order it might itself have entered." *Nissho-Iwai*, 845 F.2d at 1304. Here, Donoho removed the case to federal court on May 12, 2022, choosing to subject herself to federal jurisdiction. (Dkt. 1). She then issued her DMCA takedown request on May 18, 2022. Because the injunction was, at that point, enforced by this court, Donoho had, in effect, violated a federal court order. Accordingly, *Erie* does not preclude an award of attorney's fees, since Donoho violated a TI that was governed by federal law and enforced via a federal court.[5]

---

[5] Even if *Erie* did apply to Donoho's violation of the TI, it would not bar civil contempt sanctions because such an award here is procedural, not substantive. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991) (finding that attorneys' fees as a sanction for bad-faith conduct was not "substantive" under Erie because such sanctions do not depend on "which party wins the lawsuit, but on how the parties conduct themselves during the litigation."); *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006) (finding that the

Donoho presents several other arguments as to why the Court should not award Big Thirst attorney's fees. First, she argues that federal courts should be hesitant to use their power to sanction. (Def.'s Resp., Dkt. 75, at 7–8 (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996)). Donoho represents that, because this would be her first time sanctioned by this Court, the punishment should be the "least restrictive measure." (*Id.*). This argument omits the fact that the state court has already sanctioned Donoho before the case was removed. (Contempt Order, Dkt. 16-2). In that order, Judge Doty "ADMONISHE[D] Ms. Donoho and her counsel to refrain from reading Court orders and coming up with their own, private, hyper-technical interpretations which minimize their need to comply, and thus, put Ms. Donoho firmly in contempt of Court." (*Id.*). This may be the first time Donoho was found in contempt in this specific court—but it is not Donoho's first time violating the TI. By filing the DMCA takedown request in clear violation of Judge Doty's order not to come up with hyper-technical interpretations, Donoho directly violated the TI *and* the civil contempt order. Thus, an award of attorney's fees is appropriate compensation for Donoho's second, overt violation of the TI. While the $80,137.50 is substantial, it is proportional to the effort Big Thirst has undertaken to ensure compliance and is a direct result of Donoho's unwillingness to follow multiple court orders.

Donoho also argues that, even if the Court does award attorney's fees, it should not award the full $80,137.50 requested by Big Thirst.[6] Donoho contends that Big Thirst failed to segregate its time spent on contempt vs its time on the case in general. (Def.'s Resp., Dkt. 75, at 14–25). Here,

---

DJA is procedural for Erie purposes because "the DJA does not tie fee awards to the outcome of litigation" but instead "provides the trial court a measure of discretion to decide when awarding fees is equitable and just.").

[6] Donoho's response, (Dkt. 75), exceeds this Court's page limits by several pages. *See* W.D. Tex. Loc. R. CV-7(d)(3). Donoho did not seek leave before filing excess pages. However, because the Court finds Donoho's arguments unavailing, it sees no need to strike her response. Donoho also filed a motion for leave to file a surresponse, (Dkt. 77). However, in light of the fact that Donoho's original response already exceeded page limits, the Court sees no need for additional briefing and will deny Donoho's motion.

the Court finds each of Donoho's many arguments unconvincing. It agrees with Big Thirst that it may include the time it spent litigating Donoho's motion to dissolve the TI, since that motion was necessarily intertwined with whether she was in contempt of the TI. (Pl.'s Reply, Dkt. 76, at 2). Donoho likewise argues that Big Thirst engaged in "block billing" which makes it impossible to determine whether the time spent on a given task is unreasonable. (Def.'s Resp., Dkt. 75, at 15–17). The Court disagrees. This case has a particularly complex procedural history with numerous interrelated motions and briefs. To the extent that Big Thirst engages in "block billing," it is a permissible result of the nature of this case and the need to wade through a thicket of interrelated motions, briefs, and replies in order to comprehend the procedural posture. For the same reason, the Court finds that Big Thirst's motion contains sufficiently detailed descriptions of its tasks. The mere fact that, on the day of a hearing, Big Thirst did not point out which issues it was specifically preparing for does not render the motion impermissibly vague. Similarly, given the complexity of this case, it was reasonable for Big Thirst to allow multiple attorneys to review the same motion, and the Court will deny Donoho's defense that this billing was "redundant." (*Id.* at 18–19). The same is true for the time spent preparing the motion for attorney's fees, which constitutes a small fraction of the overall award. Finally, Big Thirst's billing of certain paralegal work includes work typically performed by a legal associate, such as preparing exhibits, so the Court will allow Big Thirst to seek compensation for those hours.

Last, Donoho challenges the award of attorney's fees as unreasonable. (*Id.* at 20–27). Here, the Court finds that the fees are a reasonable expenditure for the cost and complexity of the case based on the *Johnson* factors. The *Johnson* factors are:

> (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney was precluded from other employment by the acceptance of this case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or the circumstances imposed time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney;

(10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). "In applying [the *Johnson* factors], the district court must explain the findings and the reasons upon which the award is based. However, it is not required to address fully each of the 12 factors." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted). The time and complexity of this case, which has involved multiple hearings and dozens of briefs, responses, and replies, counsel in favor of Big Thirst's award. Because no less than three judges have now found that Donoho violated the TRO/TI, the degree of success obtained has been favorable to Big Thirst. Likewise, the rates billed by Roberts and other counsel were reasonable for their experience and reputation.[7] Donoho points out that the amount requested—more than $80,000—far exceeds the damages incurred by Big Thirst to repair its dashboard. (Def.'s Resp., Dkt. 75, at 15–17). But Donoho cites to a line of cases dealing with post-judgment attorney's fees, where district courts were reversed for awarding large attorney's fees when the plaintiff won only a small fraction of their claims. (*Id.* (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998)). Here, Big Thirst has several pending claims for relief, but it has succeeded on the civil contempt claim, and has thus achieved the overwhelming portion of the relief sought at this preliminary stage of litigation.

The *Johnson* factors weigh in favor of Big Thirst's requested fees. As a result, the Court orders Donoho to pay $80,137.50 in attorney's fees to Big Thirst. The Court sees no need to grant Big Thirst a conditional award of appellate attorney's fees but will allow it to file such a motion in the event that this order is appealed.

---

[7] Donoho argues that Big Thirst failed to show its rates are in line with the prevailing market rate, which should warrant a reduction in fees. (Def.'s Resp., Dkt. 75, at 22–24). But she does not set forth any evidence that the rates, $400/hr for Roberts and $485/hr for Gilstrap, are unreasonable or out of line with the market rate.

17

### C. Donoho's Motion for Contempt

On October 6, 2022, Donoho filed a cross-motion for civil contempt against Big Thirst and Cross-Defendant Matt McGinnis. (Mot., Dkt. 58). Donoho contends that McGinnis willfully violated the TI by deleting Donoho's access to several email accounts, and spoliated evidence through deleting relevant emails on the Big Thirst domain. (*Id.*). Specifically, Donoho relies on the fourth prong of the TI, which states, "All parties are prohibited from changing, modifying, copying, selling, or providing access to third parties to any intellectual property owned or allegedly owned by the company." (TI, Dkt. 16-1, at 2).

This argument is unavailing. As stated in the hearing, it is necessarily implied from the TI that Big Thirst would assume control over the domains and accounts in question. (Minute Entry, Dkt. 70). To the extent that some information was inadvertently lost during this transfer, it was authorized by the specific terms of the TI which ordered Donoho to transfer the relevant accounts back to Big Thirst. (TI, Dkt. 16-1, at 2). For the same reason, there is insufficient evidence to suggest that Big Thirst or McGinnis deliberately spoliated evidence when they reassumed control over the Big Thirst domain. Thus, the Court will deny Donoho's motion.

### D. Donoho's Motion to Dissolve the TI

Finally, the Court turns to Donoho's motion to dissolve the TI. (Dkt. 49). In this motion, Donoho represents that she has fully satisfied the terms of the temporary injunction, and as such, it should be dissolved. (*Id.* at 13). Similarly, Big Thirst field a notice on September 21, 2022, noting that it no longer required the Court to enforce the TI (having rebuilt the sales dashboard) and only requested monetary sanctions. (Notice, Dkt. 55). At the hearing, however, Big Thirst noted that Donoho may still have access to a corporate PayPal account, which could potentially allow her to view confidential transactions. (Minute Entry, Dkt. 70). The Court suggested that the parties confer

18

to see if the PayPal issue could be resolved without Court intervention. To this date, neither party has filed an update on the PayPal issue. Accordingly, the Court will keep the TI in force pending resolution of the PayPal access.

## IV.  CONCLUSION

**IT IS ORDERED** that Big Thirst's motion for an order to show cause for civil contempt sanctions, (Dkt. 16), is **GRANTED IN PART** as to its request for attorney's fees and **DENIED IN PART** as to its request for compensation for rebuilding the sales dashboard.[8]

**IT IS FURTHER ORDERED** that Big Thirst's motion for attorney's fees, (Dkt. 73), is **GRANTED**.

**IT IS FURTHER ORDERED** that Big Thirst is **AWARDED** $80,137.50 as reasonable attorney's fees and compensation for Donoho's violation of the TI.

**IT IS FURTHER ORDERED** that Donoho's motion for sanctions, (Dkt. 58), is **DENIED**. Donoho's motion for leave to file, (Dkt. 77), is **DENIED**.

**IT IS FINALLY ORDERED** that Big Thirst shall file a status report no later than **January 27, 2023**, as to the status of its PayPal account and any other reason why the TI should not be dissolved.

**SIGNED** on January 4, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[8] The Court previously denied Big Thirst's motion in part as to its request for criminal contempt sanctions. (Order, Dkt. 60).