IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BIG THIRST, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 1:22-CV-467-RP |
| | § | |
| LAUREN WYLIE DONOHO, | § | |
| | § | |
| Defendant/Counter-Plaintiff, | § | |
| Cross-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MATT MCGINNIS, SUZANNE MCGINNIS, | § | |
| and MARK SHILLING | § | |
| | § | |
| Cross-Defendants. | § | |

## ORDER

Before the Court is Plaintiff/Counter-Defendant Big Thirst's ("Big Thirst") Motion to

Dismiss Counterclaims, (Dkt. 17), Cross-Defendants Matt McGinnis, Suzanne McGinnis, and Mark

Shilling's (collectively "Cross-Defendants") Motion to Dismiss Crossclaims, (Dkt. 40), and the

parties' responsive briefing. Having considered the parties' submissions, the record, and the

applicable law, the Court will grant the motion in part and deny the motion in part.

### I. BACKGROUND

In early 2021, Defendant Lauren Wylie Donoho ("Donoho") and Cross-Defendant Matt

McGinnis ("Matt") began developing an e-commerce platform for the liquor industry, which was

formed as Big Thirst, Inc. in March 2021. (Counterclaim, Dkt. 2, at 3). Donoho and Matt each

contend that they developed the Big Thirst concept. Donoho alleges that, from January to October

2021, she worked full-time without compensation developing the "tech stack" for the new platform,

including the website bigthirst.com, all software applications, and the source code for the order

1

management and fulfillment system. (*Id.* at 4–5). Big Thirst alleges that Donoho developed a data dashboard that provides data analytics to customers and operates in conjunction with third-party software applications including Shopify, which creates the Big Thirst shopping cart. (Compl., Dkt. 1-1, at 1–2).

Matt is Big Thirst's CEO. (*Id.* at 4). Donoho alleges that she contributed 90% of Big Thirst's working capital but never had an employment agreement with the company and never assigned nor licensed to it any of her intellectual property. (Counterclaim, Dkt. 2, at 4). She alleges that Matt agreed to split ownership of the company 50/50, but secretly setup Big Thirst with himself as the sole owner. (*Id.* at 4). An ownership dispute arose between Matt and Donoho when Big Thirst sought a loan from the Small Business Administration. (*Id.* at 5). Big Thirst alleges that Donoho demanded a majority ownership interest in the company and exclusive control and threatened that otherwise, she would shut down the data dashboard, which: "For all intents and purposes, [] shuts down the company, and destroys Big Thirst, Inc.'s relationships with its customers and its reputation." (Dkt. 1-1, at 3–4). Donoho alleges that due to the dispute, she "was forced to resign her 'title' of Chief Operating Officer and her position as a Director of Big Thirst" on April 7, 2022. (Counterclaim, Dkt. 2, at 6). Big Thirst alleges that Matt lost access to the data dashboard the same day. (Dkt. 1-1, at 4).

Big Thirst filed this lawsuit against Donoho in state court on April 11, 2022. (Original Complaint, Dkt. 1-1). Big Thirst alleged a sole claim of breach of fiduciary duty and requested temporary and permanent injunctive relief, including a temporary restraining order ("TRO"). (*Id.*). After the state court granted Big Thirst's motion for a TRO, Donoho removed Big Thirst's action to this Court on May 12, 20222. (Notice, Dkt. 1).[1] The same day, Donoho filed a crossclaim against Big

---

[1] After this case's removal, a flurry of filings followed, with Big Thirst and Donoho accusing each other of violating the state court's injunction. (Mot. Show Cause, Dkt. 16; Mot. Sanctions, Dkt. 57). After several

Thirst, as well as its three directors: Matt McGinnis, his wife Suzanne McGinnis, and Mark Shilling. (Counterclaim, Dkt. 2). Donoho asserts counterclaims and cross-claims for copyright infringement against Big Thirst; contributory copyright infringement, conspiracy, and fraud by nondisclosure against Matt, Suzanne McGinnis, and Shilling; conversion against Big Thirst and Matt; and minority shareholder oppression, breach of fiduciary duty, and fraud against Matt. (*Id.*).

On June 2, 2022, Big Thirst filed a motion to dismiss the counterclaim. (Mot. Dismiss, Dkt. 17). It argues that it had an irrevocable license to use Big Thirst's intellectual property ("IP") and that the claim of conversion is inconsistent with the state court's injunction. (*Id.* at 2–6). On July 15, the Cross-Defendants filed also filed a motion to dismiss, presenting the same arguments regarding the IP and conversion claims, and also contending that her minority shareholder oppression claim is not legally cognizable, that she does not meet the elements for breach of fiduciary duty, and that her fraud claims lack the particularity required by Rule 9. (Mot. Dismiss, Dkt. 40, at 4–11). Donoho filed responses, (Dkts. 24, 47), and Big Thirst and Cross-Defendants filed replies, (Dkts. 33, 51).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl.*

hearings on the cross-motions, the Court found Donoho in contempt and ordered her to pay $80,137.50 for her violation of the injunction. (Order, Dkt. 78).

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

Because both Big Thirst's and Cross-Defendants' motions to dismiss raise the same implied license and conversion claims, the Court will first address those two issues. The Court will then turn to Cross-Defendants' remaining arguments regarding shareholder oppression, breach of fiduciary duty, and fraud.

**A. Implied License**

Big Thirst and Cross-Defendants both argue that Donoho's copyright infringement claim should be dismissed because Big Thirst and its directors had an implied, irrevocable, nonexclusive license to use its IP. (Big Thirst's Mot. Dismiss, Dkt. 17, at 4; Cross-Defendant's Mot. Dismiss, Dkt. 40, at 10). An implied nonexclusive license is created when "(1) a person (the licensee) requests the creation of a work; (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it; and (3) the licensor intends that the licensee requestor copy and distribute his work." *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (cleaned up). "A nonexclusive license may be irrevocable if supported by consideration." *Id.* at 882.

Big Thirst argues that "an implied nonexclusive license clearly arose under the circumstances" because it "requested Donoho to create Big Thirst's IP" and Donoho created and delivered it to Big Thirst in her capacity as the company's co-founder. (Mot. Dismiss, Dkt. 17, at 4). However, a "district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6)." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). While Big Thirst may successfully prove that it had an implied license to the IP at the summary judgment stage, that defense appears premature as a Rule 12 motion. The Court must accept Donoho's well-pled facts as true and draw reasonable inferences in her favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).[2] Based on her complaint, Donoho's facts do plausibly show that Big Thirst specifically requested the creation of her work. (*Id.*). Donoho alleges that she did not intend for Big Thirst to copy and distribute the work and that she developed the work as an owner of the company, which in fact, she was not. (*Id.* at 10). Drawing reasonable inferences in Donoho's favor, it appears plausible that she developed the

---

[2] Even disregarding Donoho's purely legal conclusions, such as the statement that she "never assigned any of her intellectual property to Big Thirst[,]" Donoho has still stated a plausible claim. (Counterclaim, Dkt. 2, at 5); *Iqbal*, 556 U.S. at 678.

IP without the intention for it to be copied and did not grant the company an implied license to use the materials outsider her role as a co-owner.

Likewise, it is unclear from the counterclaim (and the motions to dismiss) whether Donoho developed the IP in exchange for company shares, as Big Thirst must show to establish consideration. (Counterclaim, Dkt. 2, at 8). Big Thirst alleges that she developed the IP in response to Big Thirst's issuance of 2,700,000 shares to her, but this claim is unsupported by the available evidence so far. Donoho appears to have already been working on the Big Thirst IP prior to the issuance of shares, and nothing in her counterclaim suggests that the issuance of shares was in exchange for use of her IP. (Mot. Dismiss, Dkt. 17, at 2; Counterclaim, Dkt. 2, at 3–4). Because Donoho has pled facts which suggest there was no consideration for developing the Big Thirst IP, it remains plausible that the implied license was revocable.  The Court will thus deny Big Thirst's motion to dismiss the copyright infringement claims.

As to Cross-Defendants, the Court finds that Donoho alleges no facts which support her conclusion that any of the Cross-Defendants were personally involved in the copyright infringement. Donoho alleges that they were directors of Big Thirst, Inc., and that "[u]pon information and belief, all Cross-Defendants used and copied the Donoho Copyrighted Works without Mrs. Donoho's permission." (Counterclaim, Dkt. 2, at 4, 11). This is a conclusory allegation unsupported by any facts in the complaint, and the Court need not accept it as true. *Twombly*, 550 U.S. at 561. It does not follow that, because Big Thirst infringed on Donoho's copyrights, the directors of the company must have also committed infringement. Because Donoho's copyright infringement lacks any factual basis to allege individual infringement, the Court will dismiss those claims without prejudice.

6

### B. Conversion

Donoho also brings a claim of conversion for a Shopify account against both Big Thirst and Matt McGinnis. (Counterclaim, Dkt. 2, at 12–13). Big Thirst and Matt contend that Donoho's conversion claims should be dismissed because it is inconsistent with the state court's TRO and temporary injunction ("TI"). They argue that the state court found that there can be no conversion claim because Big Thirst was simply assuming control over a Shopify account that the state court specifically ordered Donoho to turn over to Big Thirst. (Mot. Dismiss, Dkt. 17, at 6). Donoho argues that McGinnis went beyond the state court's order by contesting ownership of the Shopify account and locking Donoho out of access entirely. (Counterclaim, Dkt. 2, at 13).

First, the Court addresses the threshold inquiry of whether it can consider the TRO and TI at the motion to dismiss stage. As a general rule, courts should consider "the contents of the pleadings and the attachments thereto" for a Rule 12 motion. *Villareal*, 814 F.3d at 766. However, the Court may consider "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)). Big Thirst has attached the TRO and TI to its motion to dismiss, and it is central to Donoho's conversion claim. Donoho argues that the "sham lawsuit" convinced the state court to order transfer of the Shopify account, which led to the property's conversion. (Counterclaim, Dkt. 2, at 13). Whether the state court ordered Donoho to turn over the account is directly connected to whether Donoho still had legal rights to the account. Because it is central to Donoho's claim and attached to Big Thirst's motion to dismiss, state court orders are properly before the Court on the Rule 12 motion.

Turning to the merits of the claim, a plaintiff must establish three elements for conversion under Texas law: "(1) the plaintiff, owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an

7

unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property." *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 748 (Tex. App.—El Paso 2013, no pet.) (citing *Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 321 (Tex.App.—El Paso 2006, no pet.)). Here, Donoho has failed to meet the second element. The state court's TRO and TI ordered Donoho to "provide Big Thirst, Inc. with all administrative log-in credentials for . . . Shopify[.]" (TI, Dkt. 17-2, at 1–2). By obtaining an injunction granting it administrative access to the Shopify account, Big Thirst and Matt were not "unauthorized" in accessing the account. Donoho's argument that Matt was unauthorized in contesting ownership of the account is unavailing. The state court's TI plainly intended that Big Thirst and Matt would regain full access to its online accounts, including Shopify. (*Id.* at 2–3 ("Finally, Donoho is holding all administrative log-in credentials for software and intellectual property used by Big Thirst, Inc. and Big Thirst, Inc. needs that administrative access to operate its business.")). Because the state court had ordered Donoho to provide full access to Big Thirst, it was not "to the exclusion of and inconsistent with [Donoho's] rights" to contest ownership of the Shopify account. *Cuidado*, 404 S.W.3d at 748.

Donoho concedes that "Big Thirst was using [the Shopify account] for its business." (Counterclaim, Dkt. 2, at 12). Under the terms of the TRO and TI, it was entitled to full administrative access of the account. While the state court's findings were preliminary, it noted that Donoho must turn over access of accounts "owned by Big Thirst, Inc.," and that this included the Shopify account, implying that Big Thirst owned the account. (TI, Dkt. 17-2, at 1–2). Donoho cannot claim that she had legal possession of an account which she was ordered to turn over to the party whom she accuses of conversion. Nor can she show that Big Thirst's change in ownership was

to the exclusion of her rights, since the state court's TI gave full access to Big Thirst.[3] (*Id.*). As a result, Donoho does not state a plausible claim for conversion.

### C. Minority Shareholder Oppression

Cross-Defendants next claim that Donoho's claim for minority shareholder oppression is not legally cognizable. (Mot. Dismiss, Dkt. 40, at 4). "Delaware does not recognize a cause of action for minority shareholder oppression." *Joe W. & Dorothy Dorsett Brown Found. v. Frazier Healthcare V, L.P.*, 889 F. Supp. 2d 893, 897 (W.D. Tex. 2012), *aff'd*, 538 F. App'x 484 (5th Cir. 2013) (citing *Nightingale & Assocs., LLC v. Hopkins*, No. 07–4239, 2008 WL 4848765, at *4 (D.N.J. Nov. 5, 2008)). Donoho counters this by arguing that a shareholder may violate Delaware law by breaching its fiduciary duty against a minority shareholder. (Donoho's Resp., Dkt. 47, at 7). This goes to a breach of fiduciary duty claim, not a shareholder oppression claim. The Court will therefore dismiss Donoho's minority shareholder oppression claim.

### D. Breach of Fiduciary Duty

Cross-Defendants next contest Donoho's claim for breach of fiduciary duty. (Mot. Dismiss, Dkt. 40, at 4–6).  To state a claim for breach of fiduciary duty, a party must show (i) that a fiduciary duty existed; (ii) that the defendant breached that duty; and (iii) the party incurred damages as a result of the breach. *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 531 (W.D. Tex. 2020). Cross-Defendants argue that Donoho fails to state a claim because she alleges only that Matt *threatened* to force Donoho out of the company for below market value, but that he never actually took those actions or made good on his threats. (*Id.*). This argument is premature based on

---

[3] Nor can Donoho claim that she was a "customer" under the meaning of the TI. The state court prohibited all parties from changing access to intellectual property and did not "exclude use by customers as used prior to April 1, 2022." (TI, Dkt. 17-2, at 2). But the TI contemplated customers of Big Thirst's business, not customers of the accounts, such as Shopify, because it was concerned with further interference into Big Thirst's business. (*Id.*). Nor was Donoho a third party to the state court suit. Thus, Donoho cannot plausibly claim that Big Thirst was violating the TI by modifying access to gain ownership of the Shopify account.

the pleadings. Donoho alleges that Matt violated his fiduciary duty by engaging in repeated conduct that effectively forced her out of the company, that he threatened to reduce her shares to nothing, and failed to issue a stock certificate to her. (Counterclaim, Dkt. 2, at 15). While Cross-Defendants argue that a threat is not a concrete action, it still may be a breach in and of itself. (Mot. Dismiss, Dkt. 40, at 4–6). By threatening to violate his fiduciary duty, and convincing Donoho that he would do so, Matt may have violated his fiduciary duty, regardless of whether he made good on those threats. Donoho has properly alleged that Matt's fiduciary duty existed as the majority shareholder, and that his threats reduced the economic value of Donoho's shares and forced her to resign. (Counterclaim, Dkt. 2, at 15).

Cross-Defendants argues in their reply that Donoho's breach of fiduciary duty claim is derivative. (Cross-Def.'s Reply, Dkt. 51, at 3–4). Because Cross-Defendants did not raise this defense in their original motion, the Court finds that they cannot now raise it as an affirmative defense in the same Rule 12 motion. *See Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350 (W.D. Tex. 2020) ("[T]he scope of the reply brief must be limited to addressing the arguments raised in the response or memorandum in opposition.") (quoting *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010)). And, as Cross-Defendants concede, Donoho does allege at least one cognizable harm to herself, in that she was forced to step down from her role in the company. (Cross-Def.'s Reply, Dkt. 51, at 4).[4] The Court will deny Cross-Defendant's motion for Donoho's breach of fiduciary duty claims as to any harm she may have suffered from having to step down from Big Thirst, Inc.

---

[4] It is unclear to what extent Donoho alleges she was harmed by Matt breaching his fiduciary duty by violating Donoho's copyrights, as Cross-Defendants allege. (Cross-Def.'s Reply, Dkt. 51, at 3–4). Donoho's cross-claim does not appear to raise such a claim, but the Court nonetheless agrees with Cross-Defendants that it would be preempted by the Copyright Act. *Spear Mktg., Inc. v. Bancorp S. Bank*, 791 F.3d 586, 594 (5th Cir. 2015).

**E. Fraud and Conspiracy**

Donoho also alleges fraud against Matt, and civil conspiracy to commit fraud and fraud by non-disclosure against all three Cross-Defendants. (Counterclaim, Dkt. 2, at 15–19). Donoho claims that Matt knowingly made false representations about ownership of Big Thirst so that she would continually put labor and capital into the company while Matt secretly incorporated Big Thirst with himself as the sole shareholder behind her back. (*Id.* at 16–17). She alleges that the other two Cross-Defendants, Mark Shilling and Suzanne McGinnis, conspired with Matt to accomplish this goal. (*Id.* at 17–18). Finally, she alleges that the three Cross-Defendants failed to disclose material facts regarding Matt's true intentions. (*Id.* at 18–19).

1. Alleged Fraud by Matt

Allegations of fraud must be pled with specificity to satisfy Rule 9. Fed. R. Civ. P. 9(b).  A claim of fraud must allege "the who, what, when, and where." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). A plaintiff must "specify the particulars of time, place, and contents of the false representations." *Id.* at 179 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "For example, plaintiffs must plead "when each defendant or other corporate officer learned that a statement was false, how that defendant learned that the statement was false, and the particular document or other source of information from which the defendant came to know that the statement was false." *Schnurr v. Preston*, No. 5:17-CV-512-DAE, 2018 WL 8584292, at *3 (W.D. Tex. May 29, 2018) (cleaned up). "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Cross-Defendants contend that Donoho fails to identify the time or place of the fraudulent statements. Donoho, meanwhile, alleges that she does not need to allege each particular time and

place because Matt's fraud was ongoing for several months and such detail would be excessive and redundant. (Donoho's Resp., Dkt. 47, at 12).

Here, the Court finds that Donoho's allegation of fraud against Matt lack sufficient particularity to satisfy Rule 9. While the counterclaim identifies the who (Matt), it fails to identify the where or when. Donoho alleges that Matt "made false representations to [Donoho] that she would be an equal owner and co-founder of Big Thirst", but Donoho never specifies when that promise was made. (Counterclaim, Dkt. 2, at 16). The timing of the allegedly fraudulent representations is important to the complaint because whether Matt made the statements before or after he incorporated Big Thirst, Inc. may be necessary to show scienter. And while Donoho does not need to allege the precise location of each and every statement, a complaint of fraud must at least give some specificity of when and where the fraud occurred, especially as to specific statements made by a defendant.

Donoho relies heavily on *U.S. ex rel. Johnson v. Shell Oil Co.* for the proposition that she does not need to plead fraud in painstaking detail. 183 F.R.D. 204 (E.D. Tex. 1998). In that case, the district court rejected the idea that the plaintiffs must "allege facts with excruciating exactness as to the times, locations, and persons, involved in each and every statement plead." *Id.* at 206. The court further noted that sufficiency of pleadings may depend "upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *Id.* (citing *Payne v. United States*, 247 F.2d 481, 486, (8th Cir.1957)). However, *Shell Oil* dealt with a False Claims Act complaint by third-party relators against a company, and the district court held that the relators did not need to allege detailed information they could not yet access. *Id.* By contrast, Donoho alleges fraud that she personally witnessed with a close business partner. While the Court agrees that Donoho does not need to identify every single instance where

Matt promised equal ownership or lied to Donoho about the stock incorporation, Donoho must still allege with some specificity when such promises were made and the general place and context of such promises.

### 2. Civil Conspiracy to Commit Fraud

Because Donoho does not state a sufficient claim for fraud, she has also failed to plead civil conspiracy to commit fraud. Under Texas law, civil conspiracy is not an independent tort but rather a "derivative one that depends on some underlying tort or other illegal act." *Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021) (citing *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019)). Because Donoho has not properly alleged the underlying tort, she cannot plead civil conspiracy.

In addition, Donoho's civil conspiracy claim lacks enough well-pled facts to survive a motion to dismiss. Donoho alleges that "Cross-Defendants combined together to accomplish the fraud" which was done "by unlawful means" via a "meeting of the minds." (Counterclaim, Dkt. 2, at 17–18). These conclusory allegations are unsupported by any facts in Donoho's counterclaim. The core elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983) Donoho fails to plead any facts that show a meeting of the minds, a desire from Suzanne McGinnis or Mark Shilling to accomplish the purported goal, or their unlawful acts. Accordingly, her civil conspiracy claims are dismissed.

### 3. Fraud by Nondisclosure

Finally, the Court turns to Donoho's claim for fraud by nondisclosure. Because Donoho brings this claim against all three Cross-Defendants, she must plead her claim against each person with specificity. *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 370 (5th Cir. 2004); *Lang*

*v. DirecTV Inc.*, 735 F. Supp. 2d 421, 437 (E.D. La. 2010) ("[A] complaint alleging fraud may not group the defendants together. Plaintiffs must plead specific facts as to each defendant for each of the Rule 9(b) requirements") (cleaned up). As in *Southland* and *Lang*, Donoho impermissibly groups the Cross-Defendants together. Her complaint alleges that all three Cross-Defendants had a duty to disclose true facts to Donoho but failed to do so because they intended Donoho to "refrain from acting" based on the nondisclosure. (Counterclaim, Dkt. 2, at 18–19). Beyond the mere allegation that Suzanne McGinnis and Mark Shilling were directors, there are no facts or claims that they individually intended to commit fraud by nondisclosure.

The fraud by nondisclosure claim also lacks specificity under Rule 9. Rule 9(b) applies to fraud by nondisclosure because "[f]raud by non-disclosure [is a] subcategory of fraud . . . ." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). Donoho does not identify when Suzanne McGinnis or Mark Shilling became unaware of Matt's alleged scheme to defraud her, so she has not plead that they breached their duty to disclose. (Cross-Def.'s Reply., Dky. 51, at 7–8). And for the same reasons that Donoho's claim of general fraud fails against Matt, it fails to specifically allege fraud by nondisclosure against him. The Court agrees with Cross-Defendants that Donoho must allege with particularity when she learned that she would not gain an equal stake in the company, which goes directly to any damages she suffered as a result of the alleged fraud. Accordingly, it finds that her fraud by nondisclosure claim should be dismissed without prejudice.

### F. Leave to Amend

In the alternative, Donoho requests leave to amend her complaint. (Donoho's Resp., Dkt. 47, at 20). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th

Cir. 2002) (citation and internal quotation marks omitted). "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

Here, the Court dismisses several of Donoho's claims, including conversion, minority shareholder oppression, and fraud. No amendment may overcome Donoho's failure to plead minority shareholder oppression, as it does not exist as a claim under Delaware law. Likewise, it would be futile to allow Donoho to amend her claim of conversion, since Big Thirst has affirmatively shown that its ownership of the Shopify account was authorized by the state court's orders. As to Donoho's claims for fraud, the Court sees no reason to deny leave to amend. It dismisses Donoho's claims for failure to meet the pleading requirements of Rule 9, and such deficiencies may be overcome by an amended pleading that sets out the alleged fraud with greater specificity.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Big Thirst's Motion to Dismiss Counterclaims, (Dkt. 17), and Cross-Defendants' Motion to Dismiss Crossclaims, (Dkt. 40), are **DENIED IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Big Thirst's Motion, (Dkt. 17), is **DENIED** as to copyright infringement but **GRANTED** as to Donoho's conversion claim.

**IT IS FURTHER ORDERED** that Cross-Defendants' motion, (Dkt. 40), is **DENIED** as to breach of fiduciary duty against Matt McGinnis, but **GRANTED** as to Donoho's claims for

copyright infringement, conversion, minority shareholder oppression, fraud, conspiracy to commit fraud, and fraud by nondisclosure.

**IT IS FINALLY ORDERED** that Donoho's claims for conversion and minority shareholder oppression are **DISMISSED** with prejudice. Donoho's claims for copyright infringement, fraud, conspiracy to commit fraud, and fraud by nondisclosure are **DISMISSED** without prejudice. As no claims survive against them, Cross-Defendants Suzanne McGinnis and Mark Shilling shall be **TERMINATED** from the docket.

**SIGNED** on February 17, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE