IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BIG THIRST, INC., | § § § § § § § § § § § § § § § § § | |
| Plaintiff/Counter-Defendant, | | |
| v. | | 1:22-CV-467-RP |
| LAUREN WYLIE DONOHO, | | |
| Defendant/Counter-Plaintiff/ Cross-Plaintiff, | | |
| v. | | |
| MATT McGINNIS | | |
| Cross-Defendant. | | |

## ORDER

Before the Court is Cross-Defendant Matt McGinnis's ("McGinnis") Motion to Dismiss Crossclaims, (Dkt. 106). Defendant/Cross-Plaintiff Lauren Wylie Donoho ("Donoho") filed a response in opposition, (Dkt. 107), and McGinnis filed a reply, (Dkt. 108). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

In early 2021, Donoho and McGinnis began developing an e-commerce platform for the liquor industry, which was formed as Big Thirst, Inc. ("Big Thirst") in March 2021. (Am. Counterclaim, Dkt. 103, at 3). Donoho and McGinnis each contend that they developed the Big Thirst concept. Donoho alleges that, from January to October 2021, she worked full-time without compensation developing the "tech stack" for the new platform, including the website bigthirst.com, all software applications, and the source code for the order management and fulfillment system. (*Id.* at 4–5). Big Thirst alleges that Donoho developed a data dashboard that provides data analytics to

1

customers and operates in conjunction with third-party software applications including Shopify, which creates the Big Thirst shopping cart. (Compl., Dkt. 1-1, at 1–2).

McGinnis is Big Thirst's CEO. (*Id.* at 4). Donoho alleges that she contributed 90% of Big Thirst's working capital but never had an employment agreement with the company and never assigned or licensed to it any of her intellectual property. (Am. Counterclaim, Dkt. 103, at 4). She alleges that McGinnis agreed to split ownership of the company 50/50, but secretly set up Big Thirst with himself as the sole owner. (*Id.* at 4). Several months into developing Big Thirst, an ownership dispute arose between McGinnis and Donoho when McGinnis sought a loan from the Small Business Administration. (*Id.* at 5). McGinnis alleges that Donoho demanded a majority ownership interest in the company and exclusive control and threatened that otherwise, she would shut down the data dashboard, which "[f]or all intents and purposes, [] shuts down the company, and destroys Big Thirst, Inc.'s relationships with its customers and its reputation." (Dkt. 1-1, at 3–4). Donoho alleges that due to the dispute, she "was forced to resign her 'title' of Chief Operating Officer and her position as a Director of Big Thirst" on April 7, 2022. (Am. Counterclaim, Dkt. 103, at 7). Big Thirst alleges that McGinnis lost access to the data dashboard the same day. (Compl., Dkt. 1-1, at 4).

Big Thirst filed this lawsuit against Donoho in state court on April 11, 2022. (Original Complaint, Dkt. 1-1). Big Thirst alleged a sole claim for breach of fiduciary duty and requested temporary and permanent injunctive relief, including a temporary restraining order ("TRO"). (*Id.*). After the state court granted Big Thirst's motion for a TRO, Donoho removed Big Thirst's action to this Court on May 12, 2022. (Notice, Dkt. 1).[1] The same day, Donoho filed a crossclaim against Big Thirst, as well as its three directors: Matt McGinnis, his wife Suzanne McGinnis, and Mark Shilling.

---

[1] After this case's removal, a flurry of filings followed, with Big Thirst and Donoho accusing each other of violating the state court's injunction. (Mot. Show Cause, Dkt. 16; Mot. Sanctions, Dkt. 57). After several hearings on the cross-motions, the Court found Donoho in contempt and ordered her to pay $80,137.50 for her violation of the injunction. (Order, Dkt. 78).

(Counterclaim, Dkt. 2). Donoho asserted counterclaims and cross-claims for copyright infringement against Big Thirst; contributory copyright infringement, conspiracy, and fraud by nondisclosure against Matt McGinnis, Suzanne McGinnis, and Mark Shilling; conversion against Big Thirst and McGinnis; and minority shareholder oppression, breach of fiduciary duty, and fraud against McGinnis. (*Id.*).

On June 2, 2022, McGinnis, Suzanne McGinnis, and Mark Shilling filed a motion to dismiss the crossclaims against them. (Mot. Dismiss, Dkt. 40). On February 17, 2023, the Court granted the motion in part, dismissing all claims against Suzanne McGinnis and Mark Shilling. (Order, Dkt. 80, at 15). However, the Court denied the motion as to Donoho's claim of breach of fiduciary duty against McGinnis and allowed Donoho leave to amend her complaint as to the fraud and copyright infringement allegations against McGinnis. (*Id.*). On October 3, 2023, Donoho filed her first amended counterclaims and crossclaims. (Dkt. 103). Donoho's amended crossclaims include an updated claim for copyright infringement, as well as claims for vicarious copyright infringement, breach of fiduciary duty, fraud, and fraud by nondisclosure, all against McGinnis. (*Id.*).

McGinnis moved to dismiss the amended crossclaims on October 24, 2023. (Mot. Dismiss, Dkt. 106). He argues that the amended counterclaim fails to identify allegations of fraud that satisfy Rule 9's heightened pleading standard. (*Id.* at 5–8). He also argues that no facts plausibly allege that he was involved in any copyright infringement. (*Id.* at 8–9). Finally, he argues that Donoho cannot bring a breach of fiduciary duty claim in her individual capacity because it is a derivative claim. (*Id.* at 9–11). Donoho responded, arguing that the breach of fiduciary duty claim is not derivative, that fraud was pled with particularity, and that McGinnis was plausibly involved in infringing her copyrighted works. (Resp., Dkt. 107, at 6–15).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to

dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

McGinnis's motion raises several arguments: (1) Donoho's fraud claim lacks particularity under Rule 9; (2) her fraud by nondisclosure claim lacks particularity; (3) her copyright infringement claim fails to allege personal involvement; and (4) her breach of fiduciary duty claim is derivative. (Mot. Dismiss, Dkt. 106). The Court will address each in turn.

### A. Fraud

The elements of a fraud claim under Texas law are: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.,* 51 S.W.3d 573, 577 (Tex. 2001)).

Allegations of fraud must be pled with specificity to satisfy Rule 9. Fed. R. Civ. P. 9(b). A claim of fraud must allege "the who, what, when, and where." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). A plaintiff must "specify the particulars of time, place, and contents of the false representations." *Id.* at 179 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "For example, plaintiffs must plead "when each defendant or other corporate officer learned that a statement was false, how that defendant learned that the statement was false, and the particular document or other source of information from which the defendant came to know that the statement was false." *Schnurr v. Preston*, No. 5:17-CV-512-DAE, 2018 WL 8584292, at *3 (W.D. Tex. May 29, 2018) (cleaned up). "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*,

404 F.2d 596, 601 (5th Cir. 1968). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

In relevant part, Donoho describes McGinnis's fraudulent conduct as:

> Mrs. Donoho and Mr. McGinnis co-founded Big Thirst with the explicit understanding that Mrs. Donoho would be an equal owner in the company and have an equal say in management of the company's affairs. Mr. McGinnis not only confirmed their agreement over the months of planning, but he also failed to disclose that he intended to form the company under different terms. He gave no indication to Mrs. Donoho that his position had changed. Mr. McGinnis made false representations to Mrs. Donoho that she would be an equal owner and co-founder of Big Thirst and, upon information and belief, he did so in order to induce Mrs. Donoho into loaning Big Thirst $50,000, and investing over 1,700 hours of her time into creating Big Thirst's business and running Big Thirst's operations. Mrs. Donoho also made payment on behalf of the company from her personal account at the behest of Mr. McGinnis. Upon information and belief, Mr. McGinnis directed that payment be made by Mrs. Donoho with personal funds knowing that he had no intention of reimbursing her. In fact, Mrs. Donoho was not reimbursed.
>
> Upon information and belief, when Mr. McGinnis made the false representations, he had no intention of giving Mrs. Donoho an equal equity share in Big Thirst or an equal say in the management of the company's operations. Mr. McGinnis secretly incorporated Big Thirst as a Delaware corporation behind Mrs. Donoho's back and made himself the sole shareholder. He then had to amend the Corporation's governing documents on October 6, 2021, to grant equity and a Board position to Mrs. Donoho, while forcing Mrs. Donoho into a minority position.
>
> Further, even after the Corporation's governing documents were amended, Mr. McGinnis continued to make false representations of fact to Mrs. Donoho that she would have an equal say in the management of Big Thirst, that she was a valued partner in the business, and that she would be repaid her $50,000. Mr. McGinnis knew these representations were false at the time they were made.

(Am. Counterclaim, Dkt. 103, at 18–19).

McGinnis alleges that these allegations fail to "identify the particulars of time, place, and contents of the false representations." (Mot. Dismiss, Dkt. 106, at 2 (citing *Williams*, 112 F.3d at 179)).

The Court begins its analysis of particularity by examining "the who, what, when, and where" of the complaint. *Williams*, 112 F.3d at 179. As to the "who," Donoho alleges that the fraud was committed by McGinnis. (*See* Am. Counterclaim, Dkt. 103, at 3). As to the "what," Donoho alleges that McGinnis made false representations to Donoho that she would be an equal owner and co-founder of Big Thirst to induce her to lend $50,000 and invest "1,700 hours of her time into creating Big Thirst's business and running Big Thirst's operations." (Resp., Dkt. 107, at 10). McGinnis argues that Donoho "fails to allege *what* false representations McGinnis made to her." (Mot. Dismiss, Dkt. 106, at 6) (emphasis added). However, Donoho alleges misrepresentations in detail, including that McGinnis allegedly sent an invoice to a financial consultant to incorporate Big Thirst behind Donoho's back, (Am. Counterclaim, Dkt. 103, at 3), misrepresented the share of the company that Donoho would own, (*id.* at 4), and asked Donoho to pay an invoice for the financial consultant without opening a corresponding bank account as promised, (*id.* at 5).

These allegations satisfy the "what" of McGinnis's alleged fraud. While McGinnis argues that misrepresentations regarding the financial consultant and expenses fail to identify specific fraudulent statements, (Mot. Dismiss, Dkt. 106, at 5–6), Donoho points out specific statements in reasonable detail and need not allege verbatim recollections of their conversations to survive the pleading stage. Her identification of specific representations and promises made by McGinnis raises a sufficient inference of intent by McGinnis to defraud Donoho. Although Rule 9's heightened pleading applies, the Court still views all plausible inferences in favor of the non-moving party. *Twombly*, 550 U.S. at 570. It is plausible that Donoho relied on McGinnis's statement to pay the invoice and suffered harm as a result.

As to the "when," McGinnis argues that Donoho merely identifies a three-month period where he made misrepresentations to her, which is too vague to satisfy Rule 9. (Reply, Dkt. 107, at 4–5). McGinnis's interpretation of Rule 9 is overly strict. While Donoho does allege fraud occurring

7

over a three-month period, her failure to identify particular dates within that period is not fatal to her claim. (*See* Order, Dkt. 80, at 12 ("[W]hile Donoho does not need to allege the precise location of each and every statement, a complaint of fraud must at least give some specificity of when and where the fraud occurred, especially as to specific statements made by a defendant.")). In her amended pleading, Donoho has added the requisite specificity. She claims that McGinnis's misrepresentations occurred over several months during the formation of Big Thirst. Her facts include other specific dates, such as the timing of when she sent McGinnis the company's website and logo, when McGinnis incorporated Big Thirst, when Big Thirst amended its corporate documents to include Donoho, and when Donoho paid out an invoice from her personal account. (Am. Counterclaim, Dkt. 103, at 3–5). While Donoho fails to identify specific dates and times when McGinnis represented that Donoho would be an equal shareholder, she alleges the month when these representations were made. (*Id.* at 3 ("During January 2021, Mrs. Donoho and Mr. McGinnis agreed to a 50/50 partnership.")). Donoho's identification of specific meetings and dates, along with the month that the fraudulent misrepresentations began, satisfies the "when" of his alleged fraud.

Finally, McGinnis contests the "where" of the fraud. (Mot. Dismiss, Dkt. 106, at 6). Here, the Court previously dismissed Donoho's fraud claim because she failed to identify instances where fraud had occurred. (Order, Dkt. 80, at 12–13 ("Donoho must still allege . . . the general place and context of such promises.")). In her amended pleading, Donoho alleges the fraud occurred in the workplace—in her home (working remotely) and in conversations with McGinnis over the phone. (Resp., Dkt. 107, at 11). McGinnis contends that these allegations are absent from her crossclaim, arguing that she fails to specifically allege where fraud occurred. (Reply, Dkt. 108, at 6). McGinnis is correct that specific allegations of physical locations are absent from the complaint. But it is clear from Donoho's crossclaim that the fraud occurred in the workplace and in the professional conversations between Donoho and McGinnis. The location of McGinnis during these statements,

whether working remotely or in an office, has no functional bearing on the merits of Donoho's claim or whether McGinnis is put on adequate notice of Donoho's allegations of fraud.

In sum, Donoho's amended crossclaim satisfies Rule 9's heightened standard. Donoho's complaint adequately alleges statements made by McGinnis to falsely induce her into making payments. Although Donoho does not plead fraud with perfect specificity, her crossclaim includes sufficient allegations to infer fraudulent intent and allow McGinnis to mount a defense. Therefore, the Court will deny his motion to dismiss Donoho's claims for fraud.

### B. Fraud by Nondisclosure

The Court next turns to McGinnis's motion to dismiss Donoho's fraud by nondisclosure claim. (Mot., Dkt. 106, at 6–7). Rule 9(b) applies to fraud by nondisclosure because "[f]raud by non-disclosure [is a] subcategory of fraud . . . ." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). McGinnis makes several arguments: (1) that Donoho fails to allege the fraud by nondisclosure with particularity; (2) that Donoho could not have provided a $50,000 loan to Big Thirst under fraudulent pretenses because she had already relented to her status as a minority shareholder; and (3) that Donoho fails to identify the number of hours she spent working before she relented to her status as a minority shareholder. (Mot., Dkt. 106, at 6-7).

In its previous order, the Court faulted Donoho for failing to allege when she learned that she would not gain an equal stake in the company.

> The Court agrees with [McGinnis] that Donoho must allege with particularity when she learned that she would not gain an equal stake in the company, which goes directly to any damages she suffered as a result of the alleged fraud.

(Order, Dkt. 80, at 14).

In her amended complaint, Donoho again fails to allege when she learned that she did not gain an equal stake in Big Thirst. This date (or even approximate timing) is vital to a claim for fraud, because Donoho cannot claim that she performed work or provided a loan with the expectation of a

9

50% share in the company if she already knew her share was less than 50%. While Donoho does not need to allege a precise date when she learned her stake in Big Thirst, she must at least provide an approximate period. In particular, she must identify an approximate portion of her work that was performed before she learned of the alleged fraud and whether she provided the $50,000 loan before or after learning of her stake. Accordingly, the Court will grant McGinnis's motion to dismiss the fraud by nondisclosure claim. However, the Court will allow Donoho leave to amend her complaint with the specific purpose of identifying the approximate time when she learned of her minority stake in Big Thirst.[2]

### C. Copyright Infringement

Next, the Court turns to McGinnis's motion to dismiss Donoho's copyright infringement claim. (Mot., Dkt. 106, at 8–10). McGinnis argues that "besides conclusory allegations that McGinnis 'played a personal role in creating a plan to steal' Big Thirst's IP, Donoho alleges no facts supporting that conclusion." (*Id.* at 8 (quoting Am. Counterclaim, Dkt. 103, at 12)). In response, Donoho states that her complaint alleges "personal decisions" made by McGinnis to infringe on her works. (Resp., Dkt. 107, at 14–15).

In its previous order, the Court dismissed Donoho's copyright infringement claim against all Cross-Defendants because "Donoho allege[d] no facts which support her conclusion that any of the Cross-Defendants were personally involved in the copyright infringement." (Order, Dkt. 80, at 6).

---

[2] Rule 15 states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit "examines five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)). Amendment within 30 days of this order will not result in undue delay or prejudice, nor would amending the narrow pleading issue be suggestive of bad faith. While Donoho has failed once to cure this deficiency, she has not "repeatedly" failed to do so.

10

The Court noted, "It does not follow that, because Big Thirst infringed on Donoho's copyrights, the directors of the company must have also committed infringement." (*Id.*).

Donoho's amendment nudges her complaint into the realm of plausibility. Many of Donoho's allegations remain conclusory, such as the notion that McGinnis was "personally involved in the copyright infringement." (Am. Counterclaim, Dkt. 103, at 15). Still, she also alleges that "McGinnis has personally made decisions regarding, participated in, directed, exercised control over, and benefited from Big Thirst's infringing activities on Mrs. Donoho's intellectual property" and that McGinnis "played a personal role in creating a plan to steal Mrs. Donoho's intellectual property and in executing that plan[.]" (*Id.*). Donoho also faults McGinnis for the ongoing infringement, noting, "As CEO, Board member, and majority shareholder, Mr. McGinnis has the right and the ability to supervise the infringing conduct." (*Id.*).

To survive a motion to dismiss, Donoho's factual allegations must move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plausibility is a "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663. Although a close question, the context of Donoho's factual assertions render McGinnis's personal infringement plausible. Big Thirst began as a joint venture between Donoho and McGinnis, and Donoho's complaint alleges multiple decisions made by McGinnis to conduct Big Thirst's operations. (*See* Am. Counterclaims, Dkt. 103, at 3 (noting start of relationship between Donoho and McGinnis to form Big Thirst); *id.* at 4–5 (noting that McGinnis made decision as CEO to set up Big Thirst, determined its share allocation, and directed Donoho to pay an invoice for services)). Finally, Donoho alleges at least one instance of personal involvement, noting that in March 2022, "McGinnis threatened to take her intellectual property and convert Big Thirst to a sole proprietorship." (*Id.* at 6). Donoho's allegation of copyright infringement largely rests on the inference that because Big Thirst is infringing her copyrighted works, McGinnis must be personally

11

involved in infringing those works. Still, the Court finds that inference plausible based on the facts alleged and within the context of Donoho's broader crossclaim. Based on McGinnis's role as CEO in a small startup, McGinnis's relationship with Donoho, and the allegation that McGinnis threatened to take Donoho's intellectual property, Donoho plausibly alleged McGinnis's personal involvement in copyright infringement.

### D. Breach of Fiduciary Duty

McGinnis next contests Donoho's claim for breach of fiduciary duty. (Mot., Dkt. 106, at 9–11). When McGinnis first moved to dismiss Donoho's original cross-claim, his motion omitted any argument that her claim was derivative. (*See* Mot. Dismiss, Dkt. 40). Although he raised the issue in his reply brief, the Court ruled that he had waived the matter by failing to address it in his motion. (Order, Dkt. 80, at 10). Because Donoho amended her crossclaim, McGinnis has now properly moved to dismiss the breach of fiduciary duty claim as derivative. (Mot., Dkt. 106, at 9–11).

McGinnis argues that Donoho's claim speaks to his failure to follow corporate formalities and a dilution in the value of the company's stock, which are often considered derivative harms. (Mot. Dismiss, Dkt. 106, at 10–11). Because these claims are not independent of the harm suffered by Big Thirst itself, McGinnis argues that they are entirely derivative. (*Id.*). Under Delaware law,[3] a person may not bring individual claims for harm suffered in a derivative capacity. *See Green v. LocatePlus Holdings Corp.*, No. 4032-CC, 2009 WL 1478553, at *1 (Del. Ch. May 15, 2009) (finding plaintiffs' claims were derivative in nature because they "fail[ed] to allege specific facts or even explain how . . . the harm they suffered differed from the harm suffered by LocatePlus itself or the other holders of LocatePlus' stock"). The central question here is whether Donoho plausibly alleges

---

[3] Because Big Thirst is a Delaware corporation, Delaware law applies to the breach of fiduciary duty claims. *See Sommers Drug Stores Co. Emp. Profit Sharing v. Corrigan*, 883 F.2d 345, 353–354 (5th Cir. 1989) ("In Texas, the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares, are governed by the laws of the jurisdiction of incorporation.") (internal quotations omitted).

the existence of a harm from McGinnis's breach that is separate from the harm to Big Thirst. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (noting that derivative vs. direct claims "must turn solely on the following questions: (1) who suffered the alleged harm . . . and (2) who would receive the benefit of any recovery or other remedy . . . ?").

As the Court has previously noted, "Donoho does allege at least one cognizable harm to herself, in that she was forced to step down from her role in the company." (Order, Dkt. 80, at 10). McGinnis characterizes this as related only to the value of Donoho's shares in the company, and not independent of a harm to Big Thirst. (Mot., Dkt. 106, at 10). The Court disagrees. Accepting as true the allegation that McGinnis excluded Donoho from access to corporate information and ultimately forced or coerced her into stepping down, Donoho suffered an independent harm. While Big Thirst may have also been harmed by Donoho's exit, in the sense that it lost an employee, Donoho suffered a separate harm, in the sense that she lost her job, potential income, and ability to participate meaningfully as an officer in corporate affairs. Any recovery would also benefit Donoho, since it would compensate her for a loss that is more akin to an employee's capacity than a shareholder's. *See Tooley*, 845 A.2d at 1033.

McGinnis contends that, even if Donoho's loss of employment resulted in individual harm, it is not actionable in a breach of fiduciary duty claim. (Reply, Dkt. 108, at 2–3). Specifically, because Big Thirst's bylaws allow directors to remove an officer without cause, McGinnis claims that Big Thirst owed no duty to keep Donoho as an officer. (*Id.*). The Court does not read Donoho's crossclaim so narrowly. Donoho alleges that McGinnis made threats to her to sign an SBA loan "or else"—that he would take her intellectual property and convert it to a sole proprietorship and would restructure Big Thirst's bank deals to make himself the sole underwriter. (Am. Counterclaim, Dkt. 106, at 17). Accepting these allegations as true, Donoho alleges actions that constitute breach of fiduciary duty and exceed the mere removal of an officer. The alleged threats made by McGinnis to

13

Donoho plausibly constitute a breach of the duty owed by McGinnis to Donoho beyond the discretion vested in him by the company's bylaws.

Donoho also alleges that McGinnis's failure to follow corporate formalities resulted in individual harm. These alleged failures include not holding meetings for Big Thirst, not maintaining proper corporate records, and not issuing stock certificates to Donoho. (Am. Counterclaim, Dkt. 103, at 18). The failure to issue stock certificates to Donoho is not derivative, because the overall value of the company remained the same, but Donoho as an individual shareholder held less value in the company. As to the other failures to follow formalities, Donoho claims individual harm because the failure to follow formalities may have prevented her from discovering her diminished stake in the company. (*Id.*). Overall, Donoho has alleged sufficient individual harm regarding the failure to follow corporate formalities.

The Court agrees that any wrongful dilution of shares claim would be considered derivative. *Feldman v. Cutaia*, 956 A.2d 644, 659 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008) ("The corporation suffered a dilution in value . . . [S]uch equal injury to the company's shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually."). To the extent that Donoho seeks damages for loss in shareholder value as to her extant shares, that claim is barred.[4] *See El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1266 (Del. 2016) ("As the majority opinion makes clear, a claim that an entity has issued equity in exchange for inadequate consideration—a so-called dilution claim—is a quintessential example of a derivative claim.") (Strine, C.J., concurring).

---

[4] Similarly, as the Court has already ruled, Donoho's breach of fiduciary claim may not seek recovery for loss of copyrighted materials. *Spear Mktg., Inc. v. Bancorp S. Bank*, 791 F.3d 586, 594 (5th Cir. 2015); (Order, Dkt. 80, at 10 n.4 (citing same)).

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that McGinnis's Motion to Dismiss Crossclaims, (Dkt. 106), is **GRANTED IN PART** and **DENIED IN PART**. McGinnis's motion is granted as to Donoho's fraud by nondisclosure claim but denied as to all other claims.

**IT IS FURTHER ORDERED** that Donoho's claim for fraud by nondisclosure is **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on January 29, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE